**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━━

**CURTISHA R.,**

                                        **Plaintiff,**                                        **21-CV-514Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━━

## <u>DECISION AND ORDER</u>

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #10.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with

the Social Security Administration ("SSA"), on August 20, 2018, at the age of 22,

alleging disability due to schizophrenia and supraventricular tachycardia ("SVT"). Dkt.

#6, pp.57-58.

On September 17, 2020, plaintiff appeared by telephone conference call

with counsel and testified, along with an impartial vocational expert ("VE"), Elaine

Cofliano, at an administrative hearing before Administrative Law Judge ("ALJ"), Ryan Alger. Dkt. #6, pp.33-55.

Plaintiff testified that she was 24 years old and lived alone with her three children, ages 7, 5 and 9 months. Dkt. #6, pp.37-38. She had completed ninth grade and had not obtained a GED. Dkt. #6, pp.37-38. She worked as a personal care aid for about four months in 2019, but quit during a high-risk pregnancy because she was required to lift overweight patients. Dkt. #6, pp.38-39. Plaintiff does not drive; she gets around by bus. Dkt. #6, p.40. She is able to do her own household chores and prepare meals. Dkt. #6, pp.40 & 48.

Plaintiff was hospitalized for psychiatric symptoms twice and is currently participating in counseling and is prescribed psychiatric medication, which she found helpful, although one of the medications makes her mad and causes her to shut down. Dkt. #6, pp.39, 41 & 47. She testified that she has trouble remembering things and described her self as depressed and often aggravated. Dkt. #6, p.40. She shuts down when she is faced with a stressful situation. Dkt. #6, p.42. When someone tries to teach her something new, she can hear them talking, but the words don't register in her head. Dkt. #6, p.41. Her mind often goes blank and she fails to complete tasks. Dkt. #6, p.42. She doesn't get along with her family and doesn't like to be bothered with anybody and is on guard when she leaves the house because she feels as though someone is going to try and hurt her. Dkt. #6, pp.44 & 46. She can't be around a crowd of people. Dkt. #6, p.46. She experiences panic attacks about every other week. Dkt. #6, p.45. Without her

medication, she has trouble staying asleep at night and has a difficult time getting up in the morning. Dkt. #6, pp.40-41. With her medication, plaintiff testified that she was getting eight hours of sleep at night. Dkt. #6, p.42. She has not heard voices or seen things since she started her medication approximately two months prior. Dkt. #6, p.47. Plaintiff testified that she was unable to work because it would be "so much at one time" with three kids and her "mind just goes blank." Dkt. #6, p.43.

When asked to assume an individual with plaintiff's age, education and past work experience with no exertional limits who was limited to simple instructions and could maintain attention and concentration on simple tasks for two-hour segments, with occasional interaction with coworkers and no interaction with the general public, the VE testified that plaintiff could work as a night janitor, warehouse worker, and packager, each of which are unskilled, medium exertion positions. Dkt. #6, p.52. If the individual was off task 15% or more of the work day or absent more than one day per month, the VE testified that there would be no jobs available. Dkt. #6, pp.52-53.

The ALJ rendered a decision that plaintiff was not disabled on September 30, 2020. Dkt. #6, pp.19-27. The Appeals Council denied review on March 10, 2021. Dkt. #6, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on April 19, 2021. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related

activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

        In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since her application date of August 20, 2018; (2) plaintiff's schizoaffective disorder constitutes a severe impairment; (3) plaintiff's impairment did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at all exertional levels with the following limitations: simple instructions and simple tasks requiring attention and concentration for no more than two hours at a time and occasional interaction with coworkers and no interaction with the public; and (5) plaintiff was capable of working as a night janitor, warehouse worker and packager, each of which were unskilled, medium  exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.21-27.

As support for those findings, the ALJ relied upon plaintiff's testimony and his review of plaintiff's medical records to determine that plaintiff had a mild limitation in understanding, remembering or applying information and moderate limitations in her interactions with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. Dkt. #6, p.22. The ALJ noted that "objective mental status examinations consistently indicate that the [plaintiff] is fully oriented and cognitively intact despite her depression and hallucinations" and that "treatment for the [plaintiff's] symptoms has been conservative and the [plaintiff] has occasionally demonstrated lapses in treatment without clear evidence of decompensation." Dkt. #6, p.24. As a result, the ALJ concluded that plaintiff "remains able to perform the cognitive demands of simple work on a sustained basis" and that "reasonable social restrictions including a limitation to occasional work with coworkers and no work with the general public are sufficient to reduce the risk of adverse social interactions causing mood instability or irritability." Dkt. #6, p.24. The ALJ also noted that "[t]he record does not contain an opinion from a treating provider describing more significant functional limitations." Dkt. #6, p.26. Although acknowledging the absence of an opinion from state agency medical consultant due to insufficient evidence, the ALJ determined that the "updated treatment record provides sufficient support for the residual functional capacity assessment." Dkt. #6, p.28.

Plaintiff argues that it was error for the ALJ to determine plaintiff's mental RFC without any medical opinion evidence in the record. Dkt. #7-1, pp.14-19. While recognizing plaintiff's failure to provide requested information to allow the state agency

medical consultants to assess plaintiff's functioning, plaintiff notes that none of plaintiff's treating providers submitted medical opinions, causing the ALJ to render his decision based upon his own review of the medical records, which is improper. Dkt. #7-1, pp.14. Plaintiff also argues that the ALJ failed to evaluate her SVT diagnosis. Dkt. #7-1, pp.20-21.

The Commissioner responds that the ALJ's decision is supported by substantial evidence. Dkt. #8-1, p.2. The Commissioner argues that the ALJ was not required to seek out medical source opinion evidence because plaintiff concedes that there are no gaps in the medical records and those records, which reveal benign mental status examination findings and capacity to care for three children and four dogs, support the ALJ's determination that plaintiff was capable of work involving simple tasks with limited social interaction. Dkt. #8-1, pp.15-19. The Commissioner argues that plaintiff should not be able to obtain remand simply by reframing her failure to meet her burden of proof as a lack of evidence supporting the ALJ's findings. Dkt. #8-1, pp.3 & 17-18. Finally, the Commissioner argues that there is no evidence in the record of any functional limitations flowing from plaintiff's SVT diagnosis. Dkt. #8-1, pp.19-23.

Plaintiff replies that her treatment records did not provide the ALJ with a clear functional assessment of plaintiff's mental limitations. Dkt. #9, pp.1-5.

The medical evidence of record reveals that plaintiff was diagnosed with psychosis, not otherwise specified, rule out schizophrenia, at the age of 16, during a

psychiatric hospitalization at Erie County Medical Center from April 4, 2012 through April 16, 2012. Dkt. #6, pp. 283-285. She was admitted to Niagara Falls Memorial Medical Center for psychiatric hospitalization between April 5, 2014 and April 8, 2014, with a diagnosis upon discharge of depressive disorder, not otherwise specified. Dkt. #6, p.328.

Plaintiff sought out-patient therapy on August 11, 2016, reporting symptoms of depression and post traumatic stress disorder, as well as persistent audio and visual hallucinations. Dkt. #6, p.337. She was observed to have appropriate grooming and hygiene and euthymic affect as evidenced by ease of body language and even tone of voice. Dkt. #6, p.356. She was cooperative and pleasant, had good eye contact, clear/coherent speech, logical thought process, and good insight and judgment. Dkt. #6, p.356. She was attentive to her son and did not get upset when he acted out. Dkt. #6, p.356. She did not report or evidence reaction to hallucinations during the session. Dkt. #6, p.356. She was discharged from treatment on October 21, 2016 for lack of attendance without having undergone a psychiatric evaluation. Dkt. #6, p.366.

On October 30, 2018, after returning to out-patient therapy and applying for SSI benefits, plaintiff reported use of coping skills, such as spending time with her dogs, to minimize impact of visual hallucinations that were interfering with her daily activities. Dkt. #6, p.422. On January 25, 2019, plaintiff underwent an initial psychiatric evaluation and reported that she was "seeing a shadow or things moving like her child's

toy moving on its own." Dkt. #6, p.425. She reported anxiety related to her psychotic symptoms, but denied depressive or manic symptoms. Dkt. #6, p.425. It was determined that her symptoms met the criteria for schizophrenia and she was prescribed psychiatric medication. Dkt. #6, p.429.

On January 20, 2020, plaintiff reported that she was returning to treatment after a child protective services referral due to increased symptoms of anxiety and depression. Dkt. #6, p.490. Child protective services expressed concern at plaintiff's inability to follow through with treatment and medication management and noted that plaintiff's children were not attending school regularly. Dkt. #6, p.498. On April 9, 2020, plaintiff reported feeling panicky and depressed; hearing voices and talking back to them, even when nobody is there; and seeing someone standing in her peripherals but finding no one there when she turns. Dkt. #6, p.569. She was crying a lot and constantly moving. Dkt. #6, p.569. Upon initial psychiatric evaluation on April 22, 2020, it was determined that her symptoms met the criteria for schizophrenia and that her mood was currently stable. Dkt. #6, p.576. She was again prescribed psychiatric medication. Dkt. #6, p.576. On May 14, 2020, plaintiff reported feeling depressed and not wanting to be around anybody except her children. Dkt. #6, p.605. She was actively engaged in treatment through June and July of 2018. Dkt. #6, p.585.

Remand is not always required when an ALJ fails in his duty to request medical source statements, especially where the record contains sufficient evidence from which an ALJ can assess the plaintiff's RFC. *Tankisi v. Comm'r of Soc. Sec.*, 521

Fed. App'x 29, 34 (2d Cir. 2013). In most cases, however, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Ortiz v. Colvin*, 298 F. Supp.3d 581, 586 (W.D.N.Y. 2018). A medical source opinion is particularly important where, as here, mental health issues are involved: the leeway afforded ALJ's to make common sense judgments does not typically extend to the assessment of mental limitations, which are by their nature highly complex and individualized. *Ciara B. v. Comm'r of Soc. Sec*., 610 F. Supp.3d 515, 522 (W.D.N.Y. 2022). If the ALJ concludes that a plaintiff's mental impairment is significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consulting examiner quantifying plaintiff's mental limitations generally renders the record incomplete. *Jones v. Colvin*, 14-CV-556, 2015 WL 5126151, *4-5 (W.D.N.Y. Sept. 1, 2015) (remanding where state agency review psychologist indicated that there was insufficient evidence to review plaintiff's claim). As a general rule, therefore, where the record of evidence "contains only diagnostic evidence and no opinion from a medical source about functional limitations, to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *John L. v. Comm'r of Soc. Sec*., 20-CV-925, 2021 WL 9629025, *4 (W.D.N.Y. Sept, 3, 2021) (internal quotation omitted).

    In the instant case, in the absence of any medical source opinion, the ALJ interpreted treatment notes documenting psychological symptoms which interfered with

plaintiff's daily activities and prompted referral from child protective services who were concerned about plaintiff's inability to follow through with treatment and medication management. The ALJ also drew inferences from plaintiff's conservative treatment and lapse in treatment without considering the impact of plaintiff's pregnancy upon her treatment options or the impact of her symptoms on her ability to follow through with treatment. *See Kent v. Sail*, 19-CV-97, 2020 WL 4581693, at *3 (W.D.N.Y. Aug. 10, 2020) (noting that it is a questionable practice to fault a person with diagnosed mental illness for failing to pursue mental health treatment and that an ALJ cannot "draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record that may explain infrequent or irregular medical visits or failure to seek medical treatment."), *quoting* S.S.R. 96-7p, 1996 WL 374186, at *7, *superceded* by S.S.R. 16-3 (SSA will not find an individual's symptoms inconsistent with the evidence of record without considering possible reasons she may not comply with treatment or seek treatment in a manner consistent with her complaints). As a result, this matter is remanded for the ALJ to obtain a medical source opinion addressing plaintiff's functional mental capacity for the relevant time period.

As for plaintiff's alleged physical impairment, the medical record demonstrates that during the relevant time period, plaintiff experienced one incident of "substernal chest pain" on November 5, 2019, when she was 35 weeks pregnant and experiencing contractions. Dkt. #6, pp.506-507. Upon examination, she indicated that

she did not feel palpitations and her chest pain had resolved. Dkt. #6, pp.506-507 & 510. Plaintiff was cleared from a cardiac standpoint due to negative troponins and electrocardiogram. Dkt. #6, pp.506-507. As there is no evidence that plaintiff experienced SVT symptoms[1] or received any treatment for this condition at any time during the relevant period, any error in failing to consider this as a medically determinable impairment is harmless.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7), is granted and the matter is remanded for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #8), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
              **January 30, 2024**

                              **  s/ H. Kenneth Schroeder, Jr.  **
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**

---

[1] SVT is a dysrhythmia originating at or above the atrioventricular (AV) node and is defined by a narrow complex (QRS <120 milliseconds) at a rate >100 beats per minute (bpm). *See*  https://www.ncbi.nlm.nih.gov/books/NBK441972/